UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
THOMAS GESUALDI, LOUIS
BISIGNANO, MICHAEL O'TOOLE,
MICHAEL C. BOURGAL, DARIN
JEFFERS, FRANK H. FINKEL, MARC
HERBST, THOMAS F. CORBETT,
ROBERT G. WESSELS and ROCCO
TOMASSETTI SR. As Trustees and
Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust
Fund, the Local 282 Annuity Trust Fund,
and the Local 282 Job Training Fund,

                 **REPORT AND RECOMMENDATION**
             Plaintiffs,         CV 25–599 (OEM)(AYS)

     -against-

CARA CONSTRUCTION SERVICE, INC.,

             Defendant.
-----------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael C. Bourgal, Darin Jeffers, Frank H. Finkel, Marc Herbst, Thomas F. Corbett, Robert G. Wessels and Rocco Tomassetti Sr., as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, and the Local 282 Job Training Trust Fund (collectively, the "Funds" or "Plaintiffs"), brought this action against Cara Construction Service, Inc. ("Defendant"), pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145 and the Labor Management Relations Act of 1947, 29 U.S.C. § 185, seeking to recover certain unpaid and estimated contributions due and owing to employee benefit plans. (See generally Complaint ("Compl."), Docket Entry ("DE") [1].) In addition, Plaintiffs seek interest on those unpaid, estimated, and

1

late-paid contributions, liquidated damages, audit fees, and reasonable attorneys' fees and costs. (Id. ¶ 2.)

For the reasons below, this Court respectfully recommends that Plaintiffs' motion for default judgment be granted in its entirety.

BACKGROUND

I.      Facts

        A.      The Complaint

The pertinent facts are drawn from the uncontested allegations in Plaintiffs' complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383, 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant collective bargaining agreements were deemed incorporated by reference into the complaint.)

ERISA is a comprehensive statutory regime that regulates employee retirement plans, Trs. of Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc., 692 F.3d 127, 128–29 (2d Cir. 2012) (citing ERISA § 2 et seq., 29 U.S.C. § 1001 et seq.). ERISA was designed to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." Id. at 129. One type of plan governed by ERISA is relevant here: the multiemployer pension plan which allows multiple employers to "pool contributions into a single fund that pays benefits to covered retirees ... for one or more contributing employers." Id.

2

Plaintiffs are the trustees of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds"), which are employee benefit plans and multi-employer plans within the meaning of ERISA. (Compl. at ¶¶ 6-7.) The Funds are governed by a Restated Agreement and Declaration of Trust, effective as of July 1, 1999, as amended (the "Trust Agreement"). (Id. ¶ 9; Declaration of Omar Bhatti ("Bhatti Decl.," DE [9-2], at ¶ 12; Trust Agreement, Ex. A, DE [9-6], at 1-56.) Defendant is a signatory to the Metropolitan Trucker's Association (the "MTA") and International Brotherhood of Teamsters (the "Union") for the period of July 1, 2020 through June 30, 2023 (the "2023 CBA") and July 1, 2023 through June 30, 2028 (the "2028 CBA," with the 2023 CBA, the "CBAs") that requires Defendant to make contributions to the Funds on behalf of employees who are covered by the CBA. (Compl. ¶¶ 14-16; Bhatti Decl. ¶¶ 13, 15-16; Ex. B (2023 CBA), Ex. D (2028 CBA).) The Trust Agreement is incorporated into the CBA and provides that Defendant is also bound to the Trust Agreement. (Id. ¶ 16; Bhatti Decl., Ex. B (2023 CBA), at 18, Ex. D (2028 CBA), at 18-19.)

Under the CBAs, employers are required to submit remittance reports and pay benefit contributions to the Funds according to rate schedules set forth in the CBAs for all work performed by their employees. (Compl. ¶¶ 17-18.)

Pursuant to the CBAs, contributions are due 60 days after the close of the calendar month. (Bhatti Decl., Ex. B (2023 CBA), at 18, Ex. D (2028 CBA), at 18.)

The Trust Agreement provides that if Defendant fails to remit contributions by the date due, Defendant is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent

contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs. (Compl. ¶ 19.; Bhatti Decl., Ex. A, The Trust Agreement.) The CBAs and Trust Agreement also require Defendant to submit to periodic audits. (Bhatti Decl. Ex. A (Trust Agreement), at 25; Compl. ¶ 21.)

Under the Trust Agreement, where defendant fails to submit the required remittance reports and/or the pertinent books and records for audit within twenty days of a written demand, the employer shall pay an increased monthly contribution. (Compl. ¶ 28, Bhatti Decl., Ex. A (Trust Agreement), at 25-26.) The increased monthly contribution is computed by adding 10% to the number of hours for the month in the prior twelve months in which the largest number of hours was reported by the employer; the highest hour month is called "base month." (Compl. ¶ 30; Bhatti Decl., Ex. A (Trust Agreement), at 25-26.). If a previous audit revealed an undisclosed amount of hours for the base month, the Trust Agreement allows the Funds to add 10% to the unreported hours to arrive at the total hours. (Id.) If the employer submits the required remittance reports, but subsequently fails to provide the pertinent books and records for audit, the Trust Agreement provides that the Funds may compute contributions by multiplying 50% of the number of hours reported for that month by the applicable contribution rate. (Compl. ¶ 31; Bhatti Decl., Ex. A (Trust Agreement), at 26.)

Based upon Defendant's failure to respond to an audit for the period beginning August 30, 2021, the Funds conducted "estimated audits" for estimated contributions owed by Cara to the Funds for New York City work for the period of January 1, 2022 through October 21, 2024 ("Audit #23-0792-E1") and owed by Cara for Long Island work for the period of July 1, 2022 through October 31, 2024 ("Audit #23-0793-E1"). (Adler Decl., DE [9-3], at ¶ 19; Bhatti Decl., ¶ 31, Ex. G, DE [9-6], at 146-159, Ex. H, DE [9-6], at 160-173.) The estimated audits revealed

4

that Cara owes $521,114.39 in unpaid contributions for Audit #23-0792-E1, and $398,091.31 in unpaid contributions for Audit #23-0793-E1, for a total of $919,205.70 in unpaid contributions. (Adler Decl. ¶¶ 20-22; Bhatti Decl. ¶¶ 33-41, Ex. B at 6-7, 16-18, Ex. C (rate sheet), Ex. D at 6-7, 17-18, Ex. E (NYC reports), Ex. F (LI reports), Ex. G, Ex. H.) However, Plaintiffs' records reflect that Defendant paid late the contributions due for referral period 6/30/22 of $6,186.30. (Adler Decl. ¶ 23; Bhatti Decl. ¶ 43.)

B.     Procedural History

Plaintiffs commenced this action on February 3, 2025. (Compl.) Plaintiffs properly served the summons and complaint on Defendant by personally serving Defendant's designated authorized agent in the Office of the Secretary of State of New York and filed proof of service. (DE [6], Affirmation of Service on February 5, 2025.) When Defendant failed to respond to the complaint, Plaintiffs requested, and the Clerk of Court entered a certificate of Defendant's default pursuant to Federal Rule of Civil Procedure 55(a) on March 3, 2025. (DE [7], Request for Certificate of Default on 02/28/2025; DE [8], Entry of Default.) On March 11, 2025, Plaintiffs moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b). (DE [9], Motion for Default Judgment ("Mot").) Plaintiffs served Defendant as required by Local Civil Rule 55.2(c). (DE [9-9], Certificate of Service.) On March 13, 2025, the motion was referred to the undersigned for a report and recommendation. (See Order Referring Motion dated 03/13/2025.)

DISCUSSION

I.     Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. See Shariff v. Beach 90th St. Realty Corp., No. 11-CV2551, 2013 WL

5

6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

The Clerk entered a default against Defendant on March 3, 2025. (DE [8].) The Court first considers whether Plaintiffs have submitted sufficient facts for the Court to find that Defendant's conduct warrants entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Defendant to respond to the Complaint demonstrates the default was willful. See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). Defendant had sufficient notice of the present litigation because it was properly served with a summons and Complaint, which were left with an authorized agent with the Office of the Secretary of State on

6

February 5, 2025. (DE [6].) The motion for default judgment and supporting papers were also served via mail. (DE [9-9], DE [11], DE [13].)

Notwithstanding this notice and service, Defendant did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself before this Court, thus constituting willfulness in the context of default judgment. See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Defendant did not appear and did not assert or present evidence of any defense. "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted." Id. (quotations and citations omitted); see, e.g., Indymac Bank, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether ... defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, the Fund would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), report and recommendation adopted, Dkt. No. 18 (Jan. 26, 2009); see also Sola Franchise Corp.,

2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors establish grounds for entry of a default judgment. The Court now turns to the damages sought and other relief to be awarded in such a judgment.

II.    Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d. Cir. 1992); Morales v. B&M Gen. Renovation Inc., No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted).

Based on the undisputed allegations in the Complaint, and construing them as true, the Court finds that Plaintiff has asserted valid claims under ERISA. ERISA requires employers to pay benefit contributions pursuant to a valid collective bargaining agreement. 29 U.S.C. § 1145. Specifically, Section 1145 states that in relevant part:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

8

Here, Plaintiffs have asserted that Defendant entered into CBAs with the Funds and failed to remit benefit contributions owed under the CBAs. Thus, Plaintiffs have sufficiently alleged facts supporting the elements of a claim for unpaid contributions and accompanying liability under ERISA against the Defendant.

III.    Damages Under ERISA

To establish damages upon a default, the movant needs to prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Id. at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. Transatl. Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). It is proper for the Court to "rely on detailed affidavits or documentary evidence ... to evaluate the proposed sum." Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

Section 502(g)(2) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitles to recover:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of – (i)interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the [unpaid contributions], (D) reasonable attorney's fees and costs of the action ...

29 U.S.C. § 1132(g)(2).

1.    Unpaid Contributions

Section 502(g)(2)(A) of ERISA entitles the Funds to recover monies owed on unpaid contributions. Gesualdi v. Pecgro Trucking, No. CV 14-6347 (JS) (GRB), 2015 WL 5608149, at *4 (E.D.N.Y. Aug. 13, 2015), report and recommendation adopted, No. 14-CV-6347 JS GR, 2015 WL 56018157 (E.D.N.Y. Sept. 23, 2015); Ferrara v. A Star Bus. Servs. of N.Y. Corp., No.

9

CV 11-5841(JS)(GRB), 2013 WL 1233114, at *5 (E.D.N.Y. Feb. 26, 2013). The failure to submit remittance reports, pay contributions, and submit relevant books and records for a periodic audit is a violation of the Trust Agreement. (Compl. ¶¶16-17; Adler Decl. ¶¶ 10, 15, 17). As explained in a declaration by a member of the Funds Collections Department, Omar Bhatti, "if an Employer refuses to submit to audit, the Trustees estimate the amount of contributions owed based on one of two formulas in the Trust Agreement. The determination of which formula to apply depends on whether the Employer has submitted remittance reports for the period sought to be audited. (Bhatti Decl. ¶ 26.)

Cara failed to submit its books and records to audit for the period commencing August 30, 2021. (Bhatti Decl. ¶¶ 24-25.) As a result of Cara's failure to submit to audit, the Trustees estimated the contributions due for New York City work for the period of January 1, 2022 through October 31, 2024 (Audit 23-0792-E1) and owed by Cara for Long Island work for the period of July 1, 2022 through October 31, 2024 (Audit #23-0793-E1). (Bhatti Decl. ¶ 31, Ex. G, Ex. H.)

The total amount of contributions due under Audit #23-0792-E1 is $521,114.39. (Bhatti Decl. ¶¶ 33-37, Ex. B (2023 CBA), at 6-7, 16-18, Ex. C, Ex. D (2028 CBA), at 6-7, 17-18, Ex. E, Ex. G.) The total amount of contributions due under Audit #23-0793-E1 is $398,091.31. (Bhatti Decl. ¶¶ 38-41, Ex. B (2023 CBA), at 6-7, 16-18, Ex. C, Ex. D (2028 CBA), at 6-7, 17-18, Ex. E, Ex. G.) The combined contributions due by Cara equals $919,205.70. (Bhatti Decl. ¶ 42.) Accordingly, this Court respectfully recommends damages of $919,205.70 in unpaid contributions.

2. Late Paid Contributions

Defendant paid late $6,186.30 for the months of June 2022. (Compl. ¶ 34.)

3.  Interest

Plaintiffs are entitled to interest on Defendant's unpaid remittance reports, estimated contributions, and late-paid contributions. 29 U.S.C. § 1132(g)(2)(B). The statute provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]" 29 U.S.C. § 1132(g)(2). Here, the Trust Agreement provide for interest to be charged on delinquent contributions at the rate of 1.5% per month, or 18% per year. (Bhatti Decl., Ex. A at 27.) Interest is calculated from the date due, and for each of the Funds separately by (1) taking 18% of the monthly contribution amount, (2) dividing that number by 365 days to determine the per diem (daily) interest rate, and (3) multiplying the daily interest rate by the number of days between the date the contributions were due, and if still unpaid the date the interest calculation was performed or if late-paid, the date of payment. (Bhatti Decl. ¶¶ 47-48.)

In total, Plaintiffs seek interest of $224,735.41 on the total amount of unpaid, estimated, and late-paid contributions through February 27, 2025. In addition, interest on the $919,205.70 in contributions remaining due continues to accrue beginning February 28, 2025, at the daily rate of $453.31, calculated as follows: $919,205.70 × .18 / 365. (Bhatti Decl. ¶¶ 44-53; Adler Decl. ¶ 29.) This number was calculated by utilizing a method previously accepted in this District: taking the number of days for which interest is due and multiplying it by the daily interest rate (the amount of delinquent contributions × 0.18 (yearly interest) /365 days). See, e.g., Gesualdi v. Reliance Trucking of CG Inc., No. 14–cv–4112, 2015 WL 1611313, at *11 (E.D.N.Y. Apr. 10, 2015). In addition, because the principal amount remains outstanding, daily interest at that rate should continue to accrue for each day until judgment is entered. Id. Accordingly, the Court

respectfully recommends that Plaintiffs be awarded interest as requested in the amount of $224,735.41 through February 27, 2025, plus $453.31 per day, starting February 28, 2025.

4. Liquidated Damages

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA and the Trust Agreement Defendant entered into permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii); (Bhatti Decl., Ex. A at 27.) Plaintiffs request $224,652.34 in liquidated damages, broken down as follows:

|  | Contributions | 20% of Contributions | Interest | Liquidated Damages |
|---|---|---|---|---|
| Audit #23-0792-E1 | $521,114.39 | $104,222.88 | $129,505.00 | $129,505.00 |
| Audit #23-0793-E1 | $398,091.31 | $94,910.08 | $94,910.08 | $94,910.08 |
| Late Paid Contributions | $6,186.30 | $1,237.26 | $320.31 | $1,237.26 |
| Totals |  |  |  | $225,652.34 |

Accordingly, this Court respectfully recommends that Plaintiffs be awarded $225,652.34 in liquidated damages.

5. Audit Fees

Plaintiffs seek to recover $700.00 for audit fees. (Adler Decl. ¶ 33.) Boreanaz Affidavit ¶ 10 & Exh. A; Boreanaz Affirmation ¶ 26 & Exh. D. "Audit fees are routinely recoverable in ERISA cases. Although 29 U.S.C. § 1132(g)(2) does not specifically mandate the payment of audit fees, several courts have often used the provision in § 1132(g)(2)(E) to award reasonable audit fees. The provision allows a court to provide for such other legal or equitable relief as the

12

court deems appropriate." Annuity, Welfare & Apprenticeship, Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers v. J & A Concrete Corp., 2013 WL 2467998, at * 8 (S.D.N.Y. June 6, 2013) (collecting cases). "'Requests for audit fees are generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers, Loc. Union No. 71 v. Lovejoy Metals, Inc., 495 F. Supp. 3d 174, 193 (W.D.N.Y. 2020) (quoting Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008)) (further quotation omitted). "'[A] party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested.'" Id. (quoting Bd. of Trs. of the Laborers Pension Fund v. Casale Constr. Servs., 2018 WL 4935731, at *3 (N.D.N.Y. Oct. 11, 2018) (denying audit fees where plaintiffs provided no specifics about the type of work that was performed, preventing the court from determining whether the requested audit fees were reasonable)).

Here, the Trust Agreement provides that an employer is liable for the Funds' auditors fees where the collection of delinquent contributions founding owing in an audit was referred by Trustees to counsel. (Bhatti Decl., Ex. A. at 27.)

> Auditors fees - $350, or such other amounts as the Trustees in their discretion shall apply, plus travel expenses, for each day expended in auditing the Employers, in all cases in which: . . . collection of the Employer's delinquent contributions reported by the audit is referred to the Funds' attorney, irrespective of whether such collection involves suit or other court proceeding.

(Id.)

Accordingly, Plaintiffs are entitled to recoup their audit costs which total $700 - $350 for each of the two audits. Therefore, this Court respectfully recommends that Plaintiffs be awarded $700 in audit costs.

6.   Attorney's Fees and Costs

Plaintiffs also request an award of reasonable attorney's fees and costs in the amount of $6,569.15 pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), and the Trust Agreement. (See Adler Decl. ¶¶ 34, 38, 41, 42; Bhatti Decl., Ex. A (Trust Agreement), at 27.) "ERISA 'mandates the granting of reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the collective bargaining agreement.'" Gesualdi v. Reid, No. 19-cv-4132, 2021 WL 8316386, at *13 (E.D.N.Y. Aug. 12, 2021) (quoting Sheet Metal Workers' Nat'l Pension Fund v. RHB Installations Inc., No. 12-cv-2981, 2015 WL 1509498, at *5 (E.D.N.Y. Mar. 31, 2015)).

The starting point of the attorney's fee calculation is the lodestar method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Wright v. Miah, No. 22-CV-4132, 2023 WL 6219435, at *14 (E.D.N.Y. Sept. 7, 2023), report and recommendation adopted, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023) (citation omitted); see also Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The lodestar "'is essentially what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'" Wright, 2023 WL 6219435, at *14 (quoting Streamlight, Inc. v. Gindi, No. 18-CV-987, 2019 WL 6733022, at *18 (E.D.N.Y. Oct. 1, 2019)).

To calculate attorney's fees, courts in the Second Circuit determine the reasonable hourly rate, defined as "the rate a paying client would be willing to pay[,]" and multiply that rate by the number of hours reasonably expended in prosecuting an action. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117–18 (2d Cir. 2007). To determine what a reasonable client would pay, courts consider the community in which the district court

14

sits and look to the prevailing rates for attorneys in that field with comparable experience. See Gesualdi v. Bestech Transp., LLC, No. 14-cv-1110, 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The reasonableness of hourly rates is guided by the market rate '[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and the relevant community is generally the district in which the court sits.") (cleaned up); Rudler v. Houslanger & Assocs., PLLC, No. 18-cv-7068, 2020 WL 473619, at *2 (E.D.N.Y. Jan. 29, 2020) ("This Court follows the Second Circuit's 'forum rule,' which 'generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable rate.'"). Presumptively reasonable hourly rates in this District are currently "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

The fee applicant has the burden to establish the reasonableness of the requested hourly rates. Trs. of Metal Polishers Loc. 8A-28A Funds v. Legacy Restoration Metal Stone Wood, LLC, No. 24-CV-5192, 2025 WL 3461171, at *10 (E.D.N.Y. Aug. 29, 2025). Based on the billing records of Plaintiffs' counsel, Plaintiffs were charged for the work of three individuals at the following hourly rates and levels of seniority:

| Individual | Seniority | Hourly Rate |
| --- | --- | --- |
| Michael S. Adler | Partner | $345.00 |
| George T. Kramer | Paralegal | $123.50 |
| Madlen S. Hazarian | Paralegal | $123.50 |

First, the $123.50 hourly rate for the paralegals associated with this matter – George T. Kramer and Madlen S. Hazarian – are within the $100 to $150 range for paralegals in this District. In addition, the $345 hourly rate for Michael S. Adler, a partner, who is counsel of record in over 250 ERISA cases with extensive experience in exclusively representing labor unions and employee benefit retirement funds, is reasonable as compared to $450 to $650 range for partners in this District. (Adler Decl. ¶¶ 36-38, 40.)

Plaintiffs' counsel billed for 19.5 hours of legal services, all of which were related to this case, securing an entry of default, drafting Plaintiffs' pleadings and the instant Motion, and preparing correspondence to Plaintiffs and Defendant. (Adler Decl. ¶ 39; Ex. D, DE [9-4].) Reviewing these billing records, the Court finds that this billing was "reasonable and not excessive, redundant, or unnecessary." Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp., No. 24-CV-6634, 2025 WL 3265230, at *10 (E.D.N.Y. Nov. 24, 2025). Compared to other ERISA cases involving default judgment motions, the Court also finds that Plaintiffs' counsel dedicated a reasonable number of hours to this case. See Argila v. Mach Grp., Inc., 740 F. Supp. 3d 128, 135 (E.D.N.Y. 2024) ("[C]ourts in this district typically award attorney fees for roughly twenty to thirty hours of work in ERISA default judgment cases."); Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. PETK, Inc., No. 22-CV-3559, 2022 WL 19520880, at *7 (E.D.N.Y. Oct. 13, 2022) (collecting cases).

Thus, the Court respectfully recommends awarding Plaintiffs $6,085.15 in attorneys' fees.

16

Additionally, Plaintiff requests $484.00 in costs. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." Viafara v. MCIZ Corp., No. 12-cv-7452, 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014). Having reviewed the itemized list of costs, the Court finds Plaintiffs' request to be reasonable. (Adler Decl. ¶ 41; Ex. E, DE [9-4].) The Court therefore respectfully recommends awarding Plaintiffs $484.00 in costs.

7.  Post-Judgment Interest

Under 28 U.S.C. § 1961, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." H.C. v. New York City Dep't of Educ., 71 F.4th 120, 129 (2d Cir. 2023) (internal quotation marks and citations omitted); see also 28 U.S.C. § 1961(a). Accordingly, the undersigned recommends that Plaintiffs be granted post-judgment interest calculated from the date the Clerk of Court enters judgment until the date of payment at the statutory rate. See 28 U.S.C. § 1961.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion for default judgment, found at docket entry No. 9 herein, be granted in its entirety and damages awarded in the following amounts:

(1) **$919,205.70** in unpaid contributions;

(2) **$224,735. 41** in interest, **plus $453.31 in per diem interest commencing on February 28, 2025 through the date that judgment is entered;**

(3) **$225,652.34** in liquidated damages;

(4) **$700.00** in audit fees;

(5) **$6,569.15** in attorneys' fees and costs; and

(6) Post-judgment interest calculated from the date the Clerk of Court enters judgment until date of payment, pursuant to 28 U.S.C. § 1961.

17

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
      February 3, 2026

                              /s/ Anne Y. Shields
                              Anne Y. Shields
                              United States Magistrate Judge